## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JUAN FRANCISCO BRAVO FERNÁNDEZ**<br>Plaintiff<br><br>v.<br><br>**FEDERAL BUREAU OF INVESTIGATION**<br>Defendant | Case No. |

### PETITION/COMPLAINT FOR WRIT OF MANDAMUS

**TO THE HONORABLE COURT:**

**COMES NOW**, the plaintiff Juan Francisco Bravo Fernández (hereinafter "Mr. Bravo" or "Plaintiff"), by and through the undersigned counsel and hereby respectfully states, alleges, and requests as follows:

### JURISDICTION AND VENUE

1. The Honorable Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1361.

2. The instant action is also authorized by 28 C.F.R. § 25.10(f).

3. The Honorable Court has personal jurisdiction over the defendant because it is a governmental agency of the United States.

4. Venue is proper pursuant to 28 U.S.C. § 1391(e).

### THE PARTIES

5. The plaintiff, Juan Francisco Bravo Fernández, is a resident of Puerto Rico and is otherwise *sui juris*.

6. Plaintiff is a United States citizen who has the right to purchase and possess firearms to the fullest extent allowable under the Second Amendment of the United States Constitution.

7. The defendant, Federal Bureau of Investigation (hereinafter "FBI" or "Defendant") is a governmental agency of the United States executive branch.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

8. The Second Amendment to the United States Constitution reads as follows: "the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II.

9. The Second Amendment is a fundamental right that applies to citizens domiciled in Puerto Rico. *Se*e, *e.g., Balzac v. Porto Rico*, 258 U.S. 298 (1922) (declaring that the fundamental rights of the United States Constitution apply to Puerto Rico); *McDonald v. City of Chicago, Ill.,* 561 U.S. 742 (2010) (deciding that the Second Amendment establishes fundamental rights).

10. The Brady Handgun Violence Prevention Act of 1993, Public Law 103-159 (hereinafter, "the Act"), requires federal firearm licensees to request background checks on individuals attempting to purchase a firearm.

11. The Act required the U.S. Attorney General to establish the National Instant Criminal Background Check System (hereinafter "NICS") that any federal firearm licensee may contact for immediate information on whether a prospective purchaser of a firearm would violate 18 U.S.C. § 922(g) or (n) or state law.

12. The FBI developed the NICS with the cooperation of other law enforcement agencies.

13. The NICS is operated by the FBI Criminal Justice Information Services Division's NICS Section.

14. The NICS is a national name check system that queries available records in the National Crime Information Center, the Interstate Identification Index, and the NICS Index to determine if prospective purchasers are disqualified from receiving firearms.

15. Mr. Bravo satisfies all federal and Puerto Rico legal requirements to purchase and possess firearms and should the fullest extent of Second Amendment protection.

16. Mr. Bravo attempted to purchase a firearm on three different dates: November 8, 2019; March 12, 2021; and October 9, 2021.

17. On all three occasions, the seller (the federal firearm licensee) initially refused to sell him the firearms after the NICS system yielded a "denied" message from the FBI.

18. Upon further inquiry, it was established that the FBI claimed Mr. Bravo was ineligible to purchase the firearm pursuant to 18 U.S.C. § 922(g)(1):

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

19. These denials of Mr. Bravo's applications were erroneous because they incorrectly identify him as a convicted person under 18 U.S.C. §§ 921(a)(20) and 922(g)(1).

20. Section 921(a)(20) provides that "[a]ny conviction which has been . . . set aside . . . shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

21. Mr. Bravo was previously convicted of three crimes potentially punishable by more than a year of imprisonment in case *United States v. Bravo-Fernandez, et al,* 10-cr-00232-FAB, in the United States District Court for the District of Puerto Rico.

22. These convictions were for counts one, two, and four of the indictment.

23. However, all three of these convictions were overturned.

24. Mr. Bravo was acquitted of count two on December 12, 2011. Exhibit 1 (Docket No. 618 in 10-cr-00232-FAB).

25. Mr. Bravo was acquitted of count one on November 12, 2013. Exhibit 2 (Docket No. 648 in 10-cr-00232-FAB).

26. Mr. Bravo Mr. Bravo was acquitted of count four on February 8, 2019. Exhibit 3 (Docket No. 1082 in 10-cr-00232-FAB).

27. There are no pending charges against Mr. Bravo in the aforementioned case.

28. Therefore, as a matter of law, Mr. Bravo's convictions no longer exist. He has been acquitted.

29. Because the orders of acquittal were entered without any express statement that he "may not ship, transport, possess, or receive firearms," none of Mr. Bravo's three vacated convictions constitute a "conviction" under § 921(a)(20). *See* Exhibits 1-3.

30. As a result, none of Mr. Bravo's vacated convictions qualify as a § 922(g)(1) prohibition and should not preclude him from exercising his constitutional right to possess a firearm.

31. Mr. Bravo challenged and prevailed on all three corresponding firearm challenges, but the error in the NICS system, which should have at least been corrected after prevailing on the first challenge, is still present and there is no indication that it will ever be corrected.

32. Mr. Bravo's previous requests to correct the NICS error have been ignored, even after the FBI ultimately agreed that Mr. Bravo was eligible to purchase the firearms and eventually authorized all three sales. *See, e.g.,* Exhibit 4 (letter from counsel to FBI).

33. Pursuant to 28 C.F.R. § 25.10, the NICS's Operation Center must correct erroneous system information in the NICS that is brought to the FBI's attention by a requesting individual and notify the individual of the correction.

34. The legal remedies to correct such NICS errors are found in 28 C.F.R. § 25.10. The relevant portions of the rule are depicted below:

> § 25.10 Correction of erroneous system information.

> . . .
> (c) If the individual wishes to challenge the accuracy of the record upon which the denial is based, or if the individual wishes to assert that his or her rights to possess a firearm have been restored, he or she may make application first to the denying agency, i.e., either the FBI or the POC. . . .
> . . .
> (f) An individual may also contest the accuracy or validity of a disqualifying record by bringing an action against the state or political subdivision responsible for providing the contested information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the contested information be corrected or that the firearm transfer be approved.

35. Even though Mr. Bravo has ultimately been able to purchase the firearms, he is required to go through an unreasonably lengthy challenge process and hire attorneys to fight the denials to be able to prevail.

36. The error in the NICS results in Mr. Bravo having a second-class Second Amendment right without any just cause.

37. The NICS error results in a form of disparate treatment with respect to how Mr. Bravo is treated when compared to other American citizens.

38. This is effectively a form of discrimination, a denial of equal protection under the law, and a violation of due process.  *See* U.S. Const. amend. V.

## FIRST CLAIM FOR RELIEF

*Petition for Writ of Mandamus*

39. The allegations in all preceding paragraphs are re-alleged as if fully incorporated herein.

40. Mr. Bravo is not a convicted felon under 18 U.S.C. §§ 921(a)(20) and/or 922(g)(1).

41. Mr. Bravo satisfies all federal and Puerto Rico legal requirements to purchase and possess firearms and should experience the fullest extent of Second Amendment protection.

42. Mr. Bravo has initially been denied the purchase of firearms by the FBI on three separate occasions.

43. These denials were without any just cause.

44. There is an error in the FBI's NICS system that is being used by the FBI to deny Mr. Bravo's attempts to legally purchase firearms.

45. The FBI was or should have been on notice of the NICS error when the order of acquittal was entered on February 8, 2019, or at least shortly thereafter.

46. Additionally, the FBI was or should have been on notice after it overturned its own denial and subsequently authorized the purchase of a firearm on March 13, 2020, which was over four months after Mr. Bravo's attempt to purchase it.

47. Moreover, the FBI was or should have been on notice after it overturned its own denial and subsequently authorized the purchase of a firearm that Mr. Bravo attempted to purchase on March 12, 2021.

48. Furthermore, the FBI was or should have been on notice after it overturned its own denial and subsequently authorized the purchase of a firearm on December 10, 2021, which was over two months after Mr. Bravo's attempt to purchase it.

49. It is obvious that the FBI has been on notice of the error, but the FBI simply does not care to correct it or even give a reason why the correction will not be made.

50. Mr. Bravo has made several requests to correct the obvious error and the FBI has a clear nondiscretionary duty to address the requests and make the correction.

51. To do the contrary would equate to a deprivation of Mr. Bravo's constitutional rights to possess firearms, be treated equally under the law, and entitlement to due process.  U.S. Const. amend. II and V.

52. This is an extraordinary situation where Mr. Bravo has exhausted all other available avenues of relief.

53. Mr. Bravo is left with no other choice than to seek correction by way of this extraordinary remedy.

**WHEREFORE**, Mr. Bravo respectfully requests that the Honorable Court enter an order directing the FBI to correct the NICS system to allow Mr. Bravo to experience the same Second Amendment rights enjoyed by other similarly situated American citizens who are permitted to purchase firearms without improper and unjustified restrictions.

## PRAYER FOR RELIEF

**WHEREFORE**, in view of foregoing, Mr. Bravo respectfully requests and prays for judgement in his favor against the Defendant as follows:

A. Ordering the FBI to correct the NICS system to allow Mr. Bravo to experience the same Second Amendment rights enjoyed by other similarly situated American citizens who are permitted to purchase firearms without unjustified restrictions based on false information.

B. Ordering any further relief that the court deems equitable and just under the circumstances.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico, on this 11th day of January, 2022.

**DMRA Law LLC**
Centro Internacional de Mercadeo
Torre 1, Suite 402
Guaynabo, PR 00968
Tel. 787-331-9970

*s/ Carlos J. Andreu Collazo*
Carlos J. Andreu Collazo
USDC-PR No. 307214
Carlos.Collazo@DMRALaw.com

*s/ Manuel Franco*
Manuel Franco
USDC-PR No. 302406
Manuel.Franco@DMRALaw.com